IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:06-CV-338-D

DAVID DARRYLL COONER, )
)
      Plaintiff, )
)
v. ) **ORDER**
)
TOWN OF CLAYTON et al., )
)
      Defendants. )

On December 31, 2007, defendant Town of Clayton, North Carolina ("the Town" or "defendant") moved for summary judgment against plaintiff David Darryll Cooner ("Cooner" or "plaintiff") in this employment dispute. Additionally, on January 31, 2008, the Town moved to dismiss Cooner's action as a sanction for his failure to obey this court's prior order sanctioning him. Cooner did not respond to either motion. For the reasons stated below, the Town's motion for summary judgment is granted. Alternatively, the Town's motion to dismiss the action as a sanction is granted.

I.

A.

The court reviews the substantive facts in the light most favorable to Cooner, the non-moving party. See, e.g., United States v. Diebold, 369 U.S. 654, 655 (1962) (per curiam). From approximately March 9, 2005, until July 12, 2005, Cooner was employed as a patrol officer for the Clayton Police Department ("CPD"). Am. Compl. ¶ 7. The CPD patrolled not only the Town's original jurisdiction, but also two areas outside of the Town's original limits which the town had annexed. See id. ¶¶ 9–13. One of these annexes, the "Riverwood" subdivision, is located

approximately six miles northwest of the Town. Id. ¶ 10. The other annex, the "Glen Laurel" subdivision, is located approximately five miles east of the Town. Id. ¶ 12. CPD officers routinely use Castlebury Road, which lies outside of the Town's jurisdiction, to travel between the two annexes in the course of their official duties. Id. ¶¶ 13–14.

At all relevant times, Cooner was an active bodybuilder. Id. ¶ 15. As such, Cooner followed a special, highly-regimented diet. Id. Cooner's diet had the tendency to cause him gastrointestinal difficulties. Id. In particular, Cooner experienced sudden and frequent urges to have a bowel movement, which could occur at any time. Id.

At 6:00 p.m. on June 21, 2005, Cooner began working a twelve-hour patrol shift for the CPD. Id. ¶ 17. At approximately 2:00 a.m. on June 22, 2005, Cooner needed to use the restroom. Id. ¶ 18. At approximately this same time, Cooner received a call on his personal cell phone from his long-time friend Katie Moore ("Moore"). Id. ¶ 19. Moore wanted Cooner to meet the man with whom she had gone on a date earlier that evening. Id. Because Cooner believed that Moore's house was closer than the CPD station house, Cooner asked Moore if he could use the restroom at her house, and Moore agreed that he could. See id.; Robert W. Bridges Decl. ¶ 18.

Cooner drove to Moore's house, which was located approximately two miles from Castlebury Road. Am. Compl. ¶ 20. Cooner met Moore at her house and went inside to use the restroom. Id. ¶ 23. At approximately this same time, a resident of Moore's neighborhood saw Cooner's patrol car parked outside Moore's house, and called the CPD to find out why. Bridges Decl. ¶ 7. The resident hung up before the dispatcher could gather more information. Id. ¶ 8. The dispatcher contacted Sergeant Jason Hutchins ("Hutchins"), Cooner's first-level supervisor for the evening, to forward the report. See id. Because there were no CPD officers living in that neighborhood, Hutchins drove to the area to investigate. Id. ¶ 9.

2

Meanwhile, just as Cooner was preparing to use Moore's bathroom, another CPD officer called to request that Cooner bring a piece of equipment to an arrest site back inside Town limits. Am. Compl. ¶ 23. Cooner left Moore's house to provide the equipment. However, after traveling approximately two miles, the other officer notified Cooner that he no longer needed the equipment. Id. ¶ 24. Cooner therefore returned to Moore's house to use the restroom. Id. ¶ 25.

Just as Cooner finished using the bathroom, Hutchins arrived at Moore's house and knocked on the door. Id. ¶ 25. Hutchins reported that the house was dark and there were no lights on. Bridges Decl. ¶ 10. Hutchins reported that he saw Cooner walking to the bathroom and that Cooner appeared to be holding his underwear in front of him. Id. ¶ 11. Hutchins reported that he believed Cooner saw him standing at the door, but Cooner did not come to the door. Id. Hutchins reported that he returned to his patrol car and called Cooner on the radio, stating that he was outside the house and that Cooner needed to come to the door. Id. ¶ 12.

Moore opened the door, and Hutchins said that he needed to speak to Cooner. Id. ¶ 13; see Am. Compl. ¶ 27. Moore appeared nervous and allowed Hutchins to enter. Bridges Decl. ¶¶ 13–16; see Am. Compl. ¶ 27. Hutchins saw Cooner standing in Moore's bathroom putting on his ballistic vest and shirt. Bridges Decl. ¶ 14; see Am. Compl. ¶ 27. Hutchins reported that Cooner stated that he was at Moore's house because his stomach was upset and he needed to use the bathroom. Bridges Decl. ¶ 15. However, Hutchins reported that he did not believe Cooner's story and concluded that Cooner and Moore were likely having sexual relations. Id. ¶ 16. Hutchins told Cooner to return to the CPD station house immediately. Id. ¶ 15; Am. Compl. ¶ 28.

Cooner returned to the station house and met with Hutchins at approximately 2:30 a.m. on June 22, 2005. Am. Compl. ¶ 30. Hutchins told Cooner that there would be an investigation, but that Cooner should resume his patrol. Id. However, sometime after 3:00 a.m. on June 22, 2005,

3

then-Lieutenant Robert W. Bridges ("Bridges"), Cooner's upper-level supervisor, ordered Cooner to meet with him immediately. Id. ¶ 31; see Bridges Decl. ¶ 17. Cooner related his story to Bridges, both orally and in writing, and denied having any sexual relations with Moore. Bridges Decl. ¶ 18 & Ex. A.

Bridges did not believe Cooner. Bridges Decl. ¶ 19. Bridges knew Hutchins to be honest and trustworthy, and credited Hutchins' story about what he reportedly observed at Moore's house. Id. Bridges investigated and found that the CPD station house was closer to the area Cooner was patrolling than was Moore's house when Cooner allegedly had the urge to use the restroom. Id. ¶ 20. Bridges also did not think that Cooner's story was plausible, because "[he] did not find it believable that [Cooner] would go to the house of a female 'friend' at 2:00 a.m. to use her bathroom (for a *bowel movement*, no less), then stop halfway through the job to respond to a call, and then return to finish his bowel movement." Id. ¶ 21. After investigating the matter, Bridges concluded that Cooner and Moore were engaging in sexual conduct while Cooner was on duty. Id. ¶ 22.

At 9:00 a.m. on June 23, 2005, Bridges gave Cooner written notice of a pre-disciplinary conference. Am. Compl. ¶ 33; Bridges Decl. ¶ 22 & Ex. B. The written notice charged Cooner with having sexual relations while on duty, and stated that the CPD was considering terminating Cooner's employment. Bridges Decl. Ex. B. When the disciplinary conference was held several days later, Cooner denied having sexual relations with Moore, but admitted being outside the jurisdiction without permission. Bridges Decl. ¶ 23. Cooner offered to take a polygraph or voice stress test to show that he was not having sexual relations with Moore, but the CPD declined his offer. Am. Compl. ¶ 35.

After the pre-disciplinary conference, Bridges recommended that the CPD terminate Cooner's employment. Bridges Decl. ¶ 23. Although Bridges did not believe Cooner's story, he

4

could not prove that Cooner was being dishonest about not having sexual relations with Moore. Id. Bridges therefore recommended terminating Cooner for his admitted misconduct: being outside the Town's jurisdiction without permission while on duty, thereby making him unavailable to assist other officers. Id. Cooner appealed Bridges' recommendation to the Clayton Chief of Police and the Clayton Town Manager, who both upheld the termination. Id. ¶ 24.

In his declaration, Bridges contrasted the decision to terminate Cooner with a prior incident involving an African-American CPD officer in September 2003. See id. ¶¶ 25–27. Although Bridges was not the decisionmaker in that incident, he was familiar with its facts. Id. ¶ 25. This African-American officer had been scheduled to testify all day in criminal court. See id. ¶ 26. However, when the court adjourned for lunch, the officer had already completed testifying in all of his cases. Id. Rather than returning immediately to the CPD station house as he was required to do, the officer went home for some two hours. Id. When confronted, the officer said that he became ill during lunch and wanted to rest before returning to the station, but he admitted that he should have notified the CPD dispatcher before going home. Id. The officer's supervising sergeant proposed that the officer be suspended without pay and given a permanent disciplinary write-up in his personnel file. Id. The officer did not appeal his sergeant's recommendation. Id.

In Bridges' opinion, the incident involving the African-American officer was significantly different from the incident involving Cooner. Id. ¶ 27. Bridges believed that Cooner had engaged in sexual relations while on duty. Id. Moreover, Bridges also believed that the African-American officer's conduct did not place any of his fellow officers in danger because the offending officer was expected to be in court to testify all day rather than on patrol. Id. Bridges believed that termination was the appropriate sanction for Cooner's admitted misconduct. Id. Bridges stated that Cooner's race was not a factor in his decision to terminate Cooner. Id. ¶ 28.

5

B.

On August 4, 2006, Cooner filed suit in Johnston County Superior Court against the Town, the Town Manager in his official capacity, and Bridges in his official capacity. Compl. 1. Cooner brought a 42 U.S.C. § 1983 "protected class" claim, a 42 U.S.C. § 1983 "class of one" claim, and a 42 U.S.C. § 1981 claim. Id. ¶¶ 43–56. In general, Cooner (who is white) alleges that he was subjected to disparate discipline because of his race. See Compl. ¶¶ 51, 66. Specifically, Cooner alleges that he was terminated, while the African-American officer found outside the jurisdiction in September 2003 was not. See id. ¶¶ 42–44, 48–51.

The defendants removed the action to this court on August 22, 2006. On September 29, 2006, the defendants moved to dismiss Cooner's section 1983 "class of one" claim and Cooner's claims against the Town Manager and Bridges in their official capacities. The court granted the defendants' motion to dismiss on May 2, 2007. As a result, only Cooner's section 1983 "protected class" claim and his section 1981 claim against the Town remained pending.

On June 7, 2007, Cooner's counsel moved to withdraw. On June 8, 2007, the court granted the motion. Subsequently, the Town's counsel attempted to schedule Cooner's deposition and properly noticed Cooner's deposition, but Cooner refused to cooperate and did not appear for his deposition. See Def.'s Mem. in Supp. of Def.'s First Mot. for Sanctions [hereinafter "First Sanctions Mem."]. Defendant moved for sanctions against Cooner on December 13, 2007, and the court granted the motion on January 11, 2008. In its order, the court found that Cooner had refused to cooperate in scheduling his deposition, that his actions were committed in bad faith, and that his misconduct had prejudiced defendant. Cooner v. Town of Clayton, No. 5:06-CV-338-D [D.E. 43], at 1 (E.D.N.C. Jan. 11, 2008) (order sanctioning plaintiff) [hereinafter "Hathcock Order"]. The court ordered Cooner to pay $500 to defendant as compensation for defendant's costs related to the

deposition and the motion for sanctions no later than January 25, 2008. Id. at 1–2. Further, the court wrote, "plaintiff is WARNED that failure to pay this sanction . . . could result in further sanctions, up to and including dismissal of this action." Id. at 2 (citing Anderson v. Found. for Advancement, Educ., & Employment of Am. Indians, 155 F.3d 500, 504–05 (4th Cir. 1998), and Hathcock v. Navistar Int'l Transp. Corp., 53 F.3d 36, 40 (4th Cir. 1995)).

On December 31, 2008, the Town moved for summary judgment against Cooner. Cooner did not respond to the motion for summary judgment. On January 31, 2008, the Town again moved for sanctions against Cooner. Defendant's counsel stated that Cooner had not paid the $500 sanction as the court had commanded in its Hathcock Order, and that Cooner had not offered any explanation for his failure to pay. Def.'s Mem. in Supp. of Def.'s Second Mot. for Sanctions 2 [hereinafter "Second Sanctions Mem."]. Defendant therefore requested that the court dismiss Cooner's lawsuit as a sanction for his discovery abuses. Id. at 3. Cooner did not respond to the Town's second motion for sanctions.

II.

Summary judgment should be granted where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. See, e.g., Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Diebold, 369 U.S. at 655. Where the non-moving party does not respond to a motion for summary judgment, the court must independently review the record to ensure that the movant is entitled to judgment as a matter of law. See Custer v. Pan Am. Life Ins. Co., 12 F.3d 410, 415–16 (4th Cir. 1993). The court has independently reviewed the entire record in this case, and concludes that the Town is entitled to summary judgment.

Cooner alleges employment discrimination under 42 U.S.C. §§ 1981 and 1983. See 42 U.S.C. §§ 1981, 1983. Where a plaintiff asserts an employment discrimination claim under sections 1981 and 1983, courts use the proof framework for Title VII disparate treatment claims. See, e.g., James v. Booz-Allen & Hamilton, Inc., 368 F.3d 371, 375 n.1 (4th Cir. 2004); Love-Lane v. Martin, 355 F.3d 766, 786 (4th Cir. 2004); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 n.1 (4th Cir. 2002); Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir. 1985).

Because there is no direct evidence of race discrimination in this case, Cooner must proceed under the burden-shifting framework first announced in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). A plaintiff may prove race discrimination under the burden-shifting framework of McDonnell Douglas by following a three-step process. First, the plaintiff must establish a prima facie case of discrimination. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993); Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252–53 (1981). If the plaintiff establishes a prima facie case, then the burden of production shifts to the defendant to produce evidence that the defendant took the adverse employment action for a legitimate, nondiscriminatory reason. See, e.g., St. Mary's Honor Ctr., 509 U.S. at 506–07; Burdine, 450 U.S. at 253–54. If the defendant meets its burden of production, then the plaintiff must prove by a preponderance of the evidence that the employer's stated reason for taking the adverse employment action was in fact a mere pretext for discrimination. See, e.g., Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000); Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004) (en banc).

A.

Under the McDonnell Douglas framework, Cooner must first establish a prima facie case of race discrimination. Cooner alleges a claim of discriminatory discipline. See Am. Compl. ¶¶ 49–51. Accordingly, the record must contain evidence from which a rational jury could conclude by a

preponderance of the evidence (1) that Cooner is a member of a protected class; (2) that Cooner engaged in misconduct which was comparable in seriousness to the misconduct of similarly-situated employees outside the protected class; and (3) that the discipline imposed on Cooner was more severe than that imposed on similarly-situated employees outside the protected class who engaged in comparable misconduct. See Cook v. CSX Transp. Corp. 988 F.2d 507, 511 (4th Cir. 1993); Moore v. City of Charlotte, 754 F.2d 1100, 1105–06 (4th Cir. 1985). Here, Cooner's claim fails because no rational jury could conclude that Cooner and the African-American officer who went home after court without permission were similarly situated, nor could any rational jury conclude that Cooner's misconduct was comparable in seriousness to that of the African-American officer.

Cooner identifies the African-American officer who went home without permission as a comparator. See Am. Compl. ¶¶ 42–44. Cooner must show that his circumstances were essentially identical to those of the African-American officer, save for his race. See, e.g., Cronquist v. City of Minneapolis, 237 F.3d 920, 928 (8th Cir. 2001) ("[Plaintiff] has the burden of proving that [he] and the other [employee] were similarly situated in all relevant respects. The test for whether employees are similarly situated to warrant a comparison to the plaintiff is rigorous." (citations and quotations omitted)); Heyward v. Monroe, No. 97-2430, 1998 WL 841494, at *2 (4th Cir. Dec. 7, 1998) (per curiam) (unpublished) ("[Plaintiff] must show that [the employees being compared] are similar in all relevant respects."). However, Cooner was not similarly situated to the African-American officer, because different decisionmakers were involved. See, e.g., Heyward, 1998 WL 841494, at *2 ("If different decision makers are involved, employees are generally not similarly situated."); Holtz v. Jefferson Smurfit Corp., 408 F. Supp. 2d 193, 206 (M.D.N.C. 2006) ("[T]he employee must generally show the same decisionmaker made the disparate employment decisions."), aff'd, 242 F. App'x 75 (4th Cir. 2007) (per curiam) (unpublished); see also Cherry v. Ritenour Sch. Dist., 361

9

F.3d 474, 479 (8th Cir. 2004) ("Specifically, the individuals used for comparison must[, inter alia,] have dealt with the same supervisor . . . ." (quotation omitted)). Sergeant Lapsley was the decisionmaker with respect to the African-American officer, but not with respect to Cooner. Compare Bridges Decl. ¶ 5 with id. ¶¶ 25–26.

Further, no rational jury could find that Cooner and the African-American officer engaged in comparably serious misconduct. Even if the jury did believe Cooner's story that he was only at Moore's house to use the bathroom, Cooner was outside the jurisdiction without permission while on night patrol. Cooner was expected to be ready to assist his fellow officers at any moment. His unauthorized and unanticipated departure from the jurisdiction placed other officers in danger by essentially placing the CPD one officer down should another officer have needed help quickly. See Bridges Decl. ¶ 27. By contrast, the CPD anticipated that the African-American officer who went home after court would be absent, because he was supposed to be in court all day. See id. ¶ 26. Cooner's misconduct potentially placed other officers in danger, while the African-American officer's misconduct did not, and the two incidents are not comparable in seriousness. See, e.g., Heyward, 1998 WL 841494, at *2 (incidents must involve "the same conduct without such mitigating circumstances that would distinguish [them] or the employer's treatment of them" in order to be comparable (quotation omitted)).

Cooner has failed to establish a prima facie case of race discrimination. Accordingly, after independently reviewing the entire record, the court concludes that the Town is entitled to summary judgment.

B.

Alternatively, even if Cooner could establish a prima facie case, the Town is still entitled to summary judgment because there is no evidence in the record from which a rational jury could

10

Case 5:06-cv-00338-D   Document 47   Filed 03/26/08   Page 10 of 14

conclude by a preponderance of the evidence that the Town's proffered nondiscriminatory reason for firing Cooner was a pretext for race discrimination. The Town has offered evidence of a legitimate, nondiscriminatory reason for Cooner's termination: Cooner's presence outside the jurisdiction without authorization while on duty. The burden therefore shifts back to Cooner to show by a preponderance of the evidence that the Town's proffered reason was a mere pretext for race discrimination. See, e.g., Reeves, 530 U.S. at 143; Hill, 354 F.3d at 285. "[T]he plaintiff can prove pretext by showing that the [employer's] explanation is unworthy of credence or by offering other forms of circumstantial evidence sufficiently probative of [race discrimination]." Price v. Thompson, 380 F.3d 209, 212 (4th Cir. 2004) (quotations omitted); accord Mereish v. Walker, 359 F.3d 330, 336 (4th Cir. 2004).

Although the reason for Cooner's termination was Cooner's presence outside the jurisdiction without authorization while on duty, both Hutchins and Bridges believed that Cooner had engaged in sexual relations while on duty. See, e.g., Bridges Decl. ¶ 23. Cooner attacks Hutchins' and Bridges' belief that he had sexual relations with Moore while on duty, and contends that, had Hutchins and Bridges properly investigated the matter, they would have found that Cooner did not have such relations with Moore. See Am. Compl. ¶¶ 37–38. Further, Cooner believes that it is unfair to be terminated for his admitted misconduct.

Cooner's focus on the adequacy of the investigation or the fairness of his termination misses the mark. It is ultimately irrelevant "whether the reason [for Cooner's termination] was wise, fair, or even correct." DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998) (quotation omitted); see also Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000). Instead, the focus is on whether there is a genuine issue of material fact about pretext. Thus, even assuming that Cooner really was at Moore's house simply to use the restroom, Cooner must raise a genuine issue of

11

material fact that the Town's reason for terminating his employment was pretextual. E.g., Price, 380 F.3d at 212; Mereish, 359 F.3d at 336. There is, however, no such evidence in the record. For example, there is no evidence that Bridges actually did not believe Hutchins' account and only accepted it as a pretext to fire Cooner because of his race. See, e.g., Hawkins, 203 F.3d at 279 ("[Plaintiff] fails, for example, to supply evidence that [the decisionmaker] actually believed her performance was good."). Rather, the record shows that Bridges actually believed Hutchins' report, that Bridges believed that termination was the proper discipline for Cooner's admitted misconduct (even if the misconduct did not include sexual activity while on duty), and that Bridges did not consider Cooner's race in connection with Cooner's termination. See Bridges Decl. ¶¶ 23, 27–28.

Having reviewed the entire record, the court finds no evidence from which a rational jury could conclude that the Town's proffered reason for Cooner's termination was a pretext for race discrimination. At bottom, Cooner's race discrimination claims are a disagreement with the Town over its decision to terminate his employment. Although plaintiff considers termination unfair for his admitted misconduct, the Town had the authority to terminate his employment so long as the decision was not because of his race (or some other illegal reason). As discussed above, the termination decision was not because of plaintiff's race, and this court is not a "super-personnel department weighing the prudence of employment decisions." DeJarnette, 133 F.3d at 299 (quotation omitted). On this record, the Town is entitled to summary judgment.

III.

Alternatively, the court grants the Town's motion to dismiss Cooner's lawsuit as a sanction for his failure to obey this court's Hathcock Order. In its Hathcock Order, the court commanded plaintiff to pay $500 to the Town by January 25, 2008 as a sanction for refusing to appear at plaintiff's properly-noticed deposition, and expressly "WARNED" plaintiff that failure to comply

12

might result in dismissal. Hathcock Order 1–2. Cooner has not complied, see Second Sanctions Mem. 2, and has evaded the Town's attempts to communicate with him. See First Sanctions Mem.

The court has discretion to both specifically and generally deter litigant misconduct through this "most severe" sanction. Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 643 (1976) (per curiam). However, because dismissal is a severe sanction, the Fourth Circuit has imposed several prerequisites to dismissal. First, a district court must apply a four-factor test to guide its discretion. See, e.g., Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc., 872 F.2d 88, 92 (4th Cir. 1989). These factors are:

> (1) whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

Id. Second, the district court must usually provide prior notice to the offending party that failure to comply with the court's orders will result in dismissal. See Hathcock, 53 F.3d at 40 ("[T]his court has emphasized the significance of warning a [litigant] . . . before entering such a harsh sanction."). Finally, the district court must usually employ some lesser sanction first before resorting to the ultimate sanction of dismissal. See Anderson, 155 F.3d at 504–05 (finding parallel sanction of default judgment warranted "as a last-resort sanction following the [defendant]'s continued disregard of prior warnings").

The court turns first to the Mutual Federal factors. In its Hathcock Order, the court found that Cooner had acted in bad faith by failing to appear at his deposition. Hathcock Order 1; see also First Sanctions Mem. 6 ("Mr. Cooner has *repeatedly* ignored attempts to contact him."). Cooner has continued to act in bad faith by ignoring the court's Hathcock Order. See Second Sanctions Mem. 3 ("Plaintiff responded to the Court's lenience by ignoring the Court's Order."). Similarly,

13

the court's <u>Hathcock</u> Order found that Cooner's failure to appear for his deposition prejudiced defendant. <u>Hathcock</u> Order 1. Depositions are an essential part of civil litigation, and Cooner's bad faith refusal to be deposed deprived the Town of material evidence.

Further, the court concludes that both specific and general deterrence are needed. The court cannot tolerate parties refusing to be deposed and then ignoring sanctions imposed for that misconduct. Litigation cannot proceed when parties defy their obligations to participate in proper discovery, and federal courts cannot function effectively when they are clogged with motions for sanctions against noncompliant parties. Finally, having already attempted to gain Cooner's compliance through monetary sanctions and an express warning that noncompliance might result in dismissal, the court finds that no sanction other than dismissal would be effective.

All four of the <u>Mutual Federal</u> factors counsel in favor of dismissal. The court has already attempted to gain Cooner's compliance by imposing the lesser sanction of monetary sanctions, and the court's warning to Cooner that continued noncompliance might result in dismissal had no impact on Cooner. Cooner appears to have simply abandoned his lawsuit. Accordingly, in the alternative, the court grants the Town's motion to dismiss as a sanction, but declines to award further costs.

IV.

For the reasons discussed above, the Town's motion for summary judgment is GRANTED. Alternatively, the Town's motion to dismiss the action as a discovery sanction is GRANTED.

SO ORDERED. This 26 day of March 2008.

*[signature]*
JAMES C. DEVER III
United States District Judge

14

Case 5:06-cv-00338-D   Document 47   Filed 03/26/08   Page 14 of 14